No. 14,909.

LOVELAND BRICK AND TILE CLAY PRODUCT COMPANY ET AL. *v.* WILD ET AL.
(132 P. [2d] 968)

Decided December 14, 1942.   Rehearing denied January 11, 1943.

Mr. JOHN J. MORRISSEY, Mr. WILLIAM H. SCOFIELD, Mr. HAROLD G. KING, Mr. ANDREW J. REYNOLDS, for plaintiffs in error.

Mr. JOHN A. CROSS, Mr. HORACE F. PHELPS, for defendants in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and are hereinafter designated as there, or as Mrs. Wild and the Denver Company, and Higman and the Loveland Company, respectively. Mrs. Wild's deceased husband is referred to as Wild. All stockholders of the Loveland Company, and others, were likewise defendants below.

This is a suit to quiet title to a portion of the east half of sec. 7, Tp. 5 N., R. 69 W., in Larimer county. Mrs. Wild alleges possession and title, subject to the interest of the Denver Company, and that defendants claimed under a lease long since forfeited and cancelled. Defendants having failed to appear their default was entered. Thereafter Higman and another, as stockholders of the Loveland Company, for themselves and others similarly situated, moved to vacate the default and be permitted to answer. That motion was granted and an answer filed containing two defenses, (a) Admissions and denials, and (b) Detailed allegations of collusion between plaintiffs and other defendants. Demurrer thereto was overruled and replication filed denying all new material and pleading a statutory bar. Trial was to the court which found for Mrs. Wild, holding her to be the owner in fee and entitled to possession, subject to certain easements and encumbrances material to the Denver Company but in which defendants claim no interest, and judgment was entered accordingly. To re-

view that judgment defendants prosecute this writ. The twelve assignments amount to nothing more than an assertion that the judgment was not supported by the evidence.

The record presents a transaction with many ramifications and complications extending over a period of approximately fifteen years and involving property to the value of many thousands of dollars. We have examined it in every detail but find no excuse for doing so here. Counsel for defendants in their opening brief expressly confine their argument to a single point, i.e., that there was a waiver of the right to cancel the lease. The answer brief was accordingly so confined, but two other points were raised in the reply. These we will give short notice. We set forth only such facts as are essential to an understanding of the questions examined and the reasons for our conclusions thereon.

Mrs. Wild holds as successor in interest of Wild who in 1925 executed the lease to one Tegtmeyer who a few days later assigned to the Loveland Company. This lease we refer to as Exhibit "A". It was a lease for mining and processing "clay products," running from 1925 to 1945, and providing that the Loveland Company should commence and continue operations with diligence and pay taxes. If, however, it became impossible to do so Wild would permit suspension for one year whereupon, if operation was not resumed, Wild might cancel the lease and the Loveland Company might remove all machinery it had installed whose removal would not damage the property. The consideration to be paid was specified royalties on production, and an option to renew or purchase was granted. Wild reserved the right to cancel for three months default in payment of "rentals, royalties or taxes" on thirty days' written notice. Some three months after the execution of Exhibit A a supplement thereto was executed which did little more than extend it to cover an additional tract. Mrs. Wild alleged default by the Loveland Company in that it had failed to oper-

ate for more than seven years, and that its personal property located on the premises had been sold for taxes. Higman by answer denied that the lease had been cancelled as per its terms; alleged that the Loveland Company had installed improvements of the value of approximately $150,000; that Wild owned 2500 shares of stock of the Loveland Company and one of its $500 first mortgage bonds; that during his lifetime he participated in its affairs, assisted in its maintenance, promoted its interests, knew of its default, waived the same and promised never to cancel by reason thereof; and repeatedly agreed "to permit said lease to remain in full force and effect until such time as said corporation lessee should be financially able to resume and continue its said manufacturing business"; all of which was at all times known to Mrs. Wild. The reply denied, inter alia, the waivers of Wild, and alleged by plea in bar, that, if any, they were without consideration and void under the statute of frauds. '35 C.S.A., c. 71, §§6, 8.

There is no direct evidence that it was the intention of the Wilds to waive and forfeit. The clear implication is that they did everything possible to obviate that necessity. Long continued violation of the contract, failure for years to operate, failure of the Wilds to expressly declare a forfeiture, offers and efforts by them to put the Loveland Company on its feet, and their offer to pay delinquent taxes, are all admitted and strenuously urged to support acquiesence and estoppel to forfeit the lease and reliance is placed upon the rule laid down by 1 Pomeroy's Eq. Jur. (3d ed.), p. 754, §451, and supported by *Rader v. Prather,* 100 Fla. 591, 130 So. 15. During all this time, however, the Wilds were stockholders and bondholders in the Loveland Company and in so acting were merely discharging their duty as such. If Higman's position be upheld it simply means that Mrs. Wild must leave this property unimproved and unoperated until the Loveland Company sees fit to move or its lease expires, meanwhile protecting it and paying taxes, and

that if landlords show the slightest leniency to defaulting tenants they do so at the risk of forfeiting compensation under their leases. There is no such law and no inference in support of that theory can properly be drawn from the statement of Pomeroy above cited, or from the decision in the Rader case, supra. Therein a landlord, having given reasonable assurance of waiver, sought cancellation against a tenant willing, ready and able to perform. The authority is not in point.

■ That the delay which will support a forfeiture must be one unreasonable under the circumstances, and acted or relied upon by the tenant to his disadvantage, and that it will not operate as to a continuing breach, or subsequent breaches of the covenant, seems well established and supported by precedent, sound reason and justice. *Hepp Co. v. Deahl,* 53 Colo. 274, 125 Pac. 491, 32 Am. Jur., p. 747, §882, and p. 754, §890. Tested by this rule we find no acquiesence and no estoppel here.

■ Counsel for Higman say, in their reply brief, there was no cancellation under the terms of the lease because three reasons only are recited therein for cancellations by notice, i.e., 1. Failure to begin construction; 2. failure to deliver certain stock; 3. failure to pay "rentals, royalties and taxes"; that it is undisputed that 1 and 2 were complied with; (they make an unsatisfactory explanation as to taxes); that there could be no default as to "rentals" because there were none; and that there was no default as to royalties because these "were paid for products actually manufactured and sold." But since diligent operation was required by the terms of the lease default therein and failure to pay royalties because of that default was as much default in the payment of royalties as it would have been had operation been continued and payment ceased.

■ In the same brief counsel say that an action to quiet title was improper because the interest claimed by the Loveland Company was not adverse to plaintiff's title, since both were derived from Wild. The question

is not only not in issue, not argued in the opening brief and not covered by the assignments, but the contrary is thus expressly admitted in paragraph 18 of the second amended answer of Higman: "These answering defendants * * * admit that the interests and estate so claimed by them is adverse to the title claimed by the plaintiff."

The judgment is affirmed.

MR. CHIEF JUSTICE YOUNG, MR. JUSTICE KNOUS, MR. JUSTICE GOUDY and MR. JUSTICE FETZER concur.